UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY L. F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:26-cv-05027-GJL

SOCIAL SECURITY DISABILITY APPEAL ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 8, 10, 11.

Having considered the Administrative Record (AR) and all memoranda, the Court concludes that the Administrative Law Judge (ALJ) erred in evaluating certain medical opinion evidence. Accordingly, this matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this Order.

//

## I. PROCEDURAL HISTORY

On February 14, 2020, Plaintiff filed her application for Title II Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423(a) . AR 106. Her claim was denied initially on June 30, 2020, and upon reconsideration on October 23, 2020. AR 106, 114. On September 22, 2023, ALJ Cecilia LaCara (the ALJ) issued a decision concluding that Plaintiff was not disabled. AR 135. The Appeals Council granted Plaintiff's request for review of the ALJ's decision on April 1, 2024, and remanded the matter for a new decision. AR 147.

On April 22, 2025, the ALJ, once again, issued a decision concluding that Plaintiff was not disabled. AR 17–33. The Appeals Council denied Plaintiff's request for review on December 11, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. On January 12, 2026, Plaintiff filed a Complaint with this Court seeking judicial review of the ALJ's decision. Dkt. 1. Defendant filed the sealed Administrative Record in this matter on March 16, 2026. Dkt. 5.

## II. BACKGROUND

Plaintiff was born on September 15, 1965, and was fifty-three years old on January 7, 2019, her alleged date of disability onset. AR 106. Plaintiff has at least a high school education. AR 1044. According to the ALJ, Plaintiff suffers from the severe impairments of traumatic brain injury and lumbar spine disorder. AR 20. The ALJ, however, found that Plaintiff was not disabled because she had the following Residual Functional Capacity (RFC) through her Date Last Insured (DLI) to:

> perform medium work as defined in 20 C.F.R. 404.1567(c) except [Plaintiff] can occasionally climb ramps and stairs and occasionally climb ladders, ropes or scaffolds. She is limited [to] occasional stooping and crouching. She must avoid all unprotected heights.

AR 22.

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Plaintiff argues that the ALJ erred in evaluating: (1) her subjective symptom testimony; (2) certain medical opinion evidence; and (3) certain lay witness evidence. Dkt. 8 at 1.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating the medical opinion of Dr. David White, Ph.D. (Dr. White). Dkt. 8 at 8. The Court agrees.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJ's "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[1] Rather, ALJ's must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A

---

[1] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

1. <u>Dr. White</u>

Dr. White conducted a "Neuropsychological Evaluation" on behalf of Plaintiff's DIB application on January 5 and January 6, 2022. AR 1010–66. As for Plaintiff's fatigue, Dr. White noted that her Fatigue Severity Scale "total score [of] (49) is significantly above average" and chronicled Plaintiff's allegations of fatigue from the medical records that Dr White reviewed, including allegations that fatigue "reduces her motivation[,]" "interferes with her carrying out certain duties and responsibilities . . . [and also interferes with] her work, family, [and] social life." AR 1052.

When asked about her Fatigue Severity Scale results, Plaintiff informed Dr. White that "her primary difficulties with fatigue are associated with 'mental fatigue[,]' [which Plaintiff] said occurs when she has to perform mental tasks or when she is 'overwhelmed' by various stimuli (e.g. looking at a computer screen; vestibular problems)." AR 1053. Ultimately, Dr. White opined that his observations of Plaintiff "during two days of examination (both cut short due to

her problems with fatigue)[2] provide strong evidence that neurofatigue impairs [Plaintiff's] cognitive functioning[,]" AR 1063, and consequently, that Plaintiff "is unable to perform the duties of any competitive full-time job on a reliable basis even if this required only simple repetitive actions." AR 1066.

The ALJ found Dr. White's opinion unpersuasive, generally, because of his opinion that Plaintiff:

> would be unable to perform her past work or any competitive full[-]time job that even required only simple repetitive actions. Dr. White supported his conclusions with a finding of mild neurocognitive impairment with indications of neurofatigue as [Plaintiff] was noted as too fatigued to finish testing. However, his testing noted generally average to high average functioning and an IQ of 122 with only a mild impairment with perceptual reasoning when doing visual puzzles and picture completion, which would not support his conclusions. Similarly, other providers have noted few concerns with [Plaintiff's] cognitive functioning.

AR 29.

Plaintiff argues that "the ALJ pointed out that Plaintiff performed well during the testing she completed and declared that this 'would not support [Dr. White's] conclusions'" but "Dr. White's clinical observations during the testing provided strong support for his opinion" and the ALJ's "reliance on these test scores to disregard Dr. White's observations was unreasonable" because the test scores "did not reflect Plaintiff's ability to function over a full work day." Dkt. 8 at 10. The Court agrees.

As the ALJ acknowledged, "Dr. White supported his conclusions with a finding of mild neurocognitive impairment with indications of neurofatigue as [Plaintiff] was noted as too fatigued to finish testing." AR 29. The ALJ, however, then seeks to discredit Dr. White's opinion

[2] As will be discussed, *infra*, Dr. White noted that Plaintiff "appeared to be trying her hardest and passed all of the performance validity tests. However, on both days, testing was cut short because of her problems with fatigue. If this had not occurred, it is likely that her performance on tests would have been reduced." AR 1053. This clinical observation offers a reasonable explanation for Dr. White's subsequent opinion about Plaintiff's inability to perform work-related activities in the workplace. AR 1053, 1066.

as unsupported because of Plaintiff's "generally average to high average functioning and an IQ of 122[.]" AR 29. The Court, however, observes that these findings by the ALJ do not demonstrate a lack of support for Dr. White's opinion; Dr. White acknowledged that Plaintiff performed well on testing, but as fatigue took root, Plaintiff, in the ALJ's words, was "too fatigued to finish testing." AR 29, 1042–43.

Indeed, Dr. White noted that he "stopped testing early on 1-5-2023 (after 4 hours and 15 minutes of interview and testing) and on 1-6-2023 (after three hours of testing). AR 1043. In Dr. White's opinions, if he "had not done so, [his] impression is that [Plaintiff]'s increasing fatigue level would have reduced her performance on testing" and "it is likely that [Plaintiff]'s current test results reflect her ***optimal*** level of performance, ***not*** how she would perform on a series of cognitive tasks that occurred over several hours of testing (e.g., as in a normal workday)." *Id.* (alterations in original).

Dr. White also noted that Plaintiff "appeared to have difficulty understanding instructions on different subtests, which needed to be repeated or further explained. This apparent problem *became more pronounced over the course of testing* on both days." AR 1042 (emphasis added). He noted that "[o]n both days of the evaluation, [Plaintiff] showed very poor mental stamina" and that he "had to stop testing much earlier than expected on both days because [Plaintiff] was experiencing cognitive fatigue that was starting to [a]ffect her mental functioning." AR 1054.[3]

Dr. White did not opine that Plaintiff was devoid of the ability to perform tasks successfully for a period of time. *See* AR 1010–66. Rather, Dr. White opined that after working

[3] Dr. White also interviewed Plaintiff's husband as part of his evaluation. AR 1060. Plaintiff's husband noted that Plaintiff "was exhausted after both testing sessions, even though they were only for a 'half-a-day.' [Plaintiff's husband] said both afternoons, [Plaintiff] took naps lasting between 'two and three hours.' [Plaintiff's husband] added that, after the second day of testing, [Plaintiff] slept for '12 hours at night (i.e. in addition to the afternoon nap.' When [Plaintiff] woke up in the morning, she said to him 'something like my brain feels bruised.' [Plaintiff] had a 'hard time getting up' that morning. [Plaintiff's husband] said [Plaintiff] was 'wiped out' by the testing." *Id.*

for a period, fatigue would set in, making Plaintiff "unable to perform the duties of any competitive full-time job on a reliable basis even if this required only simple repetitive actions" and that because of "the likelihood that she will experience increases in her symptoms from time to time (especially if fatigued), she would not be able to work an 8-hour day five days a week." AR 1066.[4]

Dr. White's clinical observations of Plaintiff at her two-day, hours long evaluation of Plaintiff, provide ample support for his opinion that Plaintiff "is unable to perform the duties of any competitive full-time job on a reliable basis even if this required only simple repetitive actions" due to her mental fatigue, derivative of her traumatic brain injury. AR 1010–66. For this reason, the Court concludes that the ALJ's supportability findings are not bolstered by substantial evidence.

Finally, the Court notes that, to the extent the ALJ made a consistency finding,[5] the ALJ's record citations for the proposition that Dr. White's opinion was inconsistent with the longitudinal record do not provide substantial evidence for the ALJ's finding. For instance, Exhibit 9F/25, contains no reference to Plaintiff's cognitive functioning, but the very next page, Exhibit 9F/26, indicates that Plaintiff suffered a "[t]raumatic brain injury" has had "minimal

---

[4] The ALJ also contends that Dr. White's opinion was unsupported because Plaintiff exhibited "only a mild impairment with perceptual testing when doing visual puzzles and picture completion[,]" but here too, the ALJ fails to account for Plaintiff's fatigue when partaking in these tests, and that her performance on these exams, according to Dr. White, would degrade as Plaintiff's neurofatigue set in. AR 29. This finding by the ALJ also does not indicate a lack of support for Dr. White's opinion.

[5] In evaluating Dr. White's opinion, the ALJ does not specifically invoke a consistency analysis, simply stating that "other providers have noted few concerns with [Plaintiff's] cognitive functioning." *See* AR 29. When evaluating medical opinion evidence under the post-2017 regulations, the Ninth Circuit has instructed ALJ's to "endeavor to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4. Here, the ALJ has not endeavored to use the term "consistent" with any precision, leaving the Court to divine the ALJ's rationale for discounting Dr. White's opinion. This is erroneous, because we require an ALJ to build an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Here, the ALJ has not done so.

improvement since [her] last appointment . . . [and] *is unable to use a computer for longer than 45 minutes and then* [sic] *after requires several hours of rest*." AR 863–64 (emphasis added). Likewise, Exhibit 16F/2 contains no reference to Plaintiff's cognitive functioning, AR 1074, but the previous page, Exhibit 16F/1, indicates that Plaintiff's "fatigue and headaches continued to increase" after her concussion, and that Plaintiff experienced "general fatigue, 'I fell asleep all over the place.'" AR 1073.

Moreover, despite asserting that Exhibit 26F/40 was inconsistent with Dr. White's opinion, this evidence indicates that Plaintiff experienced "[p]ost concussive syndrome" and experienced "[p]rolonged intolerance for visual movement and screens since head injury in October 2018, currently dealing with disability insurance." AR 1481. It is unclear to the Court how this evidence is inconsistent with Dr. White's opinion that fatigue would prevent Plaintiff from performing the duties of any competitive full-time job. *Cf.* AR 1066, 1481.

Finally, despite asserting that "other providers have noted few concerns with [Plaintiff's] cognitive functioning[,]" medical records, nonetheless, indicate that Plaintiff "had a concussion; has had significant post concussional syndrome causing vestibular challenges, seeing multiple specialists; since concussion has been *requiring visual breaks* limited reading and computer use[.]" AR 750 (emphasis added).[6] Similarly, physical therapy records from 2019 indicate that Plaintiff was diagnosed with "diffuse traumatic brain injury without loss of consciousness" and that after her "last session she was wiped for the rest of the day." AR 717. Subsequent treatment notes indicate Plaintiff was "doing her walking exercises but still having increased symptoms about 30 mins afterwards. She then *has to sleep it off*." AR 723 (emphasis added).

---

[6] Notably, this appointment was marked as a "short" encounter, consistent with Dr. White's opinion that as fatigue set in, Plaintiff's functioning decreased. AR 750, 945. Exhibit 26F/40, also cited by the ALJ for the proposition that Dr. White's opinion was inconsistent with the record notes that the "[t]otal time spent on the date of the encounter" was just forty minutes. AR 1481. These findings are not inconsistent with Dr. White's opinion.

At bottom, the Court concludes that, to the extent the ALJ's made a consistency finding, that finding, itself, is not supported by substantial evidence. For these reasons, the Court concludes that the ALJ erred in her evaluation of the medical opinion evidence submitted by Dr. White. Had the ALJ properly considered this evidence, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter to the Administration for further proceedings. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**B. Remaining Issues**

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding her subjective symptom testimony or the lay witness evidence because the ALJ must re-evaluate the entire sequential evaluation process on remand, including all of the medical opinion evidence, Plaintiff's subjective symptom testimony, and the lay witness evidence. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

//

//

//

//

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** AND **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 21st day of July, 2026.

Grady J. Leupold
United States Magistrate Judge